UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

———————————————————— x

CARMEN TAVAREZ-VARGAS,
Individually, and On Behalf of All Others
Similarly Situated,

                           Plaintiff,

    vs.

NOUHAUS, INC.,

                       Defendant.

———————————————————— x

Civil Action No.:

CLASS ACTION COMPLAINT FOR
VIOLATIONS OF THE AMERICANS WITH
DISABILITIES ACT OF 1990 AND NEW
YORK CITY HUMAN RIGHTS LAW

DEMAND FOR JURY TRIAL

Plaintiff Carmen Tavarez-Vargas ("Plaintiff") brings this class action both on an individual basis and, on behalf of all others similarly situated, for declaratory relief, injunctive relief and compensatory damages—including statutory and punitive damages—against defendant named herein, and alleges based upon the personal knowledge of Plaintiff, the investigation of counsel, and upon information and belief, as follows:

## NATURE OF THE ACTION

1.      Plaintiff is a visually-impaired and legally blind person[1] who brings this civil rights class action against defendant Nouhaus, Inc., ("Defendant") for its failure to design, construct, maintain, and operate its website to be fully accessible to—and independently usable by—Plaintiff and other blind or visually-impaired people who use screen-reading software.  Plaintiff asserts this action individually and on behalf of all other visually-impaired and/or legally blind individuals in the United States who have attempted to access Defendant's website and have been denied access to the equal enjoyment of goods and/or services offered on the website during the past three years from the date of the filing of the complaint (the "Class" and "Class Period").

2.      In August 2021, Plaintiff browsed and attempted to transact business on Defendant's website, www.nouhaus.com ("website" or "Defendant's website").  The main reason Plaintiff visited the website was to, *inter alia*, purchase products, goods, and/or services.  The website sells/offers different chairs and sofas.  The website had the following accessibility issues:

        (a)      The screen reader fails to read advertisement pop-up links, the website then requires the use of the cursor to close the advertisement.

---

[1] Plaintiff uses the terms "blind" or "visually-impaired" to refer to all people with visual impairments who meet the legal definition of blindness; namely, a visual acuity with correction of less than or equal to 20 x 200.  Some blind people who meet this definition have limited vision; others have no vision.

(b)     The screen reader fails to read the website's banner in the correct order.

(c)     The screen reader fails to read the name of a selected product correctly.

(d)     The screen reader fails to distinguish between an items regular and on-sale price.

(e)     The screen reader reads items not included on the website.

3.      The accessibility issues Plaintiff experienced are still found on Defendant's website as of the date of the filing of this complaint.  Plaintiff still intends to purchase certain goods and/or services from Defendant's website in the future, but currently cannot.

4.      Defendant and its website violate Title III of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101 *et seq.*, and the New York City Human Rights Law ("NYCHRL"), N.Y.C. Administrative Code §§ 8-101 *et seq.*, as the website is not equally accessible to blind and visually-impaired consumers.

5.      Plaintiff and the Class bring this action against Defendant seeking, *inter alia*, a preliminary and permanent injunction, other declaratory relief, statutory damages, actual and punitive damages, pre-judgment and post-judgment interest, and reasonable attorneys' fees and expenses.

**JURISDICTION AND VENUE**

6.      This Court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1331.

7.      This Court has supplemental jurisdiction under 28 U.S.C. § 1367 over Plaintiff's NYCHRL claims.

8.      Defendant is subject to personal jurisdiction in this District.  Defendant operates and distributes its products and/or services throughout the United States, including to consumers and others in this District.  Plaintiff has been denied the full use and enjoyment of the goods and services offered on Defendant's website in this District.  It was here that Defendant committed a

substantial part of the acts or omissions that caused injury to Plaintiff and the Class in violation of the ADA and the NYCHRL.

9.      The access barriers that Plaintiff encountered have caused a denial of Plaintiff's full and equal access multiple times in the past, and now deter Plaintiff on a regular basis from accessing the Defendant's website in the future.

10.      This Court is empowered to issue declaratory relief under 28 U.S.C. §§ 2201 and 2202.

11.      Venue is proper in this judicial district pursuant to 28 U.S.C. §§ 1391(b)(2), and (c) because: (i) Defendant's unlawful course of conduct occurred in large part in this District; and (ii) Plaintiff attempted to utilize the website in this District.

## PARTIES

**Plaintiff**

12.      Plaintiff is a resident of the Bronx, New York.  Plaintiff is a blind, visually-impaired, handicapped person and a member of a protected class of individuals as defined under 42 U.S.C. § 12102(1)-(2) – and the regulations implementing the ADA set forth at 28 CFR §§ 36.101 *et seq.* – and as defined under the NYCHRL.

**Defendant**

13.      Defendant is a Corporation registered in California with its principal place of business located at 10985 Oleander Avenue, Fontana, California.   Defendant conducts business in New York through its website, which is a place of public accommodation as defined under 42 U.S.C. § 12181(7).

## SUBSTANTIVE ALLEGATIONS

**The visually-impaired use screen-readers to access the Internet.**

14.     In 2017, the Centers for Disease Control ("CDC") estimated that the blind population in the United States reached approximately 1.7 million.  The American Foundation for the Blind's website states that the 2019 American Community Survey (conducted by the U.S. Census Bureau) identified an estimated 388,524 New Yorkers with vision difficulty.

15.     The Internet has become a significant source of information, a portal, and a tool for conducting business, doing everyday activities such as shopping, learning, banking, researching, as well as many other activities for sighted, blind and visually-impaired persons alike.  In today's tech-savvy world, blind and visually-impaired people have the ability to access websites using keyboards in conjunction with screen access software that vocalizes the visual information found on a computer screen. This technology is known as screen-reading software.[2]

16.     Blind and visually-impaired users of Microsoft Windows operating system-enabled computers and devices have several screen-reading software programs available to them.  Some of these programs are available for purchase and other machines have built-in integrated software. NonVisual Desktop Access, otherwise known as "NVDA" is currently one of the most popular screen-reading software programs available for PCs.

_____

[2] As defined by the American Federation for the Blind, a refreshable Braille display used in conjunction with a computer can provide a blind person access to information on the computer screen by electronically raising and lowering different combinations of pins on internal cells. These raised pins correspond to, and adapt, as the user moves their cursor over the text on the computer scree.

17.     Unless websites are designed to be read by screen-reading software, blind and visually-impaired persons are unable to fully access websites, and the information, products, goods and services contained thereon.

**A company's website must accommodate the use of screen readers**

18.     For screen-reading software to function, the information on a website must be capable of being rendered into text.  If the website content is not capable of being rendered into text, the blind or visually-impaired user is unable to access the same content available to sighted users.

19.     The international website standards organization, the World Wide Web Consortium, known universally as W3C, has published an updated version (version 2.1) of the Web Content Accessibility Guidelines ("WCAG").  WCAG 2.1 is a set of well-established guidelines promulgated to ensure that websites are accessible to blind and visually-impaired people.  Non-compliant websites usually contain numerous common access barriers that prevent the blind and visually-impaired from enjoying the Internet in the same way sighted individuals do.

**Defendant's website discriminates against the visually-impaired by containing access barriers**

20.     Defendant is an online retail company that owns and operates a website offering products that Defendant delivers to New York and across the country.  Defendant offers its website so that, *inter alia*, the general public can transact business on it.  The goods and services offered by Defendant's website include, but are not limited to: chairs and sofas.

21.     It is Defendant's policy and practice to deny Plaintiff and the Class access to its website, and to specifically deny the goods and services offered to the general public.  Due to Defendant's failure and refusal to remove access barriers to its website, Plaintiff and the Class

have been—and currently are—denied equal access to the website and the goods and/or services

offered thereon.

22.    Plaintiff is visually-impaired and/or legally blind.  Plaintiff uses the NVDA screen-

reader to access websites on the Internet.  During Plaintiff's visits to Defendant's website, the last

occurring in August 2021, Plaintiff encountered multiple access barriers that denied Plaintiff full

and equal access to the goods and/or services offered to (and made available for) the general public.

These access barriers were the reason that Plaintiff was denied the full enjoyment of the goods

and/or services offered on the website.

23.    While attempting to navigate the website, Plaintiff encountered multiple

accessibility barriers, including, but not limited to, the following:

(a)    The screen reader fails to read advertisement pop-up links, the website then

requires the use of the cursor to close the advertisement.

(b)    The screen reader fails to read the website's banner in the correct order.

(c)    The screen reader fails to read the name of a selected product correctly.

(d)    The screen reader fails to distinguish between an items regular and on-sale

price.

(e)    The screen reader reads items not included on the website.

24.    Plaintiff was highly interested in purchasing the products offered by Defendant.

Plaintiff remains hopeful that the accessibility barriers will be cured expeditiously, as Plaintiff

intends to return to the website in order to transact business there as soon as the accessibility

barriers are cured.

**Defendant must remove the website's accessibility barriers**

25.    The access barriers Plaintiff encountered have caused a denial of Plaintiff's full and

equal access in the past, and now deter Plaintiff on a regular basis from visiting the website,

presently and in the future. These access barriers have deterred Plaintiff from learning about the various products sold to sighted individuals because Plaintiff was unable to determine and or purchase items from its website, among other things. If the website were equally accessible to all, Plaintiff and the Class could independently navigate the website and complete a desired transaction as sighted individuals do.

26.     Plaintiff has actual knowledge of the access barriers that make these services inaccessible and independently unusable by blind and visually-impaired people. Because simple compliance with the WCAG 2.1 Guidelines would provide Plaintiff and the Class equal access to the website, Plaintiff alleges that Defendant has engaged in acts of intentional discrimination, including but not limited to the following policies or practices:

(a)     constructing and maintaining a website that is inaccessible to visually-impaired individuals, including Plaintiff and the Class;

(b)     failing to construct and maintain a website that is sufficiently intuitive so as to be equally accessible to visually-impaired individuals, including Plaintiff and the Class; and

(c)     failing to take actions to correct these access barriers in the face of substantial harm and discrimination to blind and visually-impaired consumers (a protected class), including Plaintiff and the Class.

27.     Defendant therefore uses standards, criteria or methods of administration that have the effect of discriminating or perpetuating the discrimination of others, as alleged herein. Since Defendant's website is not equally accessible—and because Defendant lacks a corporate policy that is reasonably calculated to cause its website to become and remain accessible—it must retain a qualified consultant acceptable to Plaintiff to assist Defendant to comply with WCAG 2.1 guidelines for its website. Defendant must cooperate with the agreed upon consultant to:

(a)    train its employees and agents who develop the website on accessibility compliance under the WCAG 2.1 guidelines;

(b)    regularly check the accessibility of the website under the WCAG 2.1 guidelines;

(c)    regularly test user accessibility by blind or vision-impaired persons to ensure that Defendant's website complies under the WCAG 2.1 guidelines; and

(d)    develop an accessibility policy (clearly posted on its website(s)) with contact information for users to report accessibility-related problems.

28.    If the website were accessible, Plaintiff and the Class would be able to independently view service items, and/or shop for goods via the website. Defendant has, upon information and belief, invested substantial sums in developing and maintaining its website and has generated significant revenue thereon. The revenues procured by Defendant far exceed the associated cost of making the website equally accessible to visually-impaired consumers.

## CLASS ACTION ALLEGATIONS

29.    Plaintiff brings this action as a nationwide class action pursuant to Rules 23(a) and (b)(2) of the Federal Rules of Civil Procedure ("Fed. R. Civ. P."), both individually and on behalf of the Class currently defined as: all visually-impaired or legally blind individuals in the United States who have attempted to access Defendant's website and have been denied access to the equal enjoyment of goods and/or services offered on the website during the Class Period. Plaintiff also seeks certification of a sub-class of all visually-impaired and/or legally blind individuals in the City of New York who have attempted to access Defendant's website and have been denied access

to the equal enjoyment of goods and services offered on the website during the Class Period (the

"NYC Sub-Class").[3]

30.    Excluded from the Class are Defendant, any entity in which Defendant has a

controlling interest, and the officers, directors, affiliates, legal representatives, heirs, successors,

subsidiaries, and/or assigns of any such individual or entity.

31.    Upon information and belief, there are hundreds of members in the Class who have

suffered from Defendant's conduct complained of herein during the Class Period.  Accordingly,

joinder is impracticable pursuant to Fed. R. Civ. P. Rule 23(a)(1).

32.    Common issues of fact or law predominate over individual issues within the

meaning of Fed. R. Civ. P. Rule 23(a)(2).  Common issues of law and fact include, but are not

limited to, whether:

(a)    the website is a place of "public accommodation" under the ADA;

(b)    the website is a "place or provider of public accommodation" under the

NYCHRL; and

(c)    the website denies the full and equal enjoyment of its products, services,

facilities, privileges, advantages, or accommodations to people with visual disabilities, violating

the ADA and/or NYCHRL;

33.    Plaintiff's interests are typical of, and not antagonistic to the interests of, the Class

and the claims arising out of Defendant's common uniform course of conduct are all based upon

the same facts and legal theories.

---

[3] The Class and NYC Sub-Class are hereinafter identified, collectively, as "the Class," unless
otherwise stated.

34.     Plaintiff will fairly and adequately protect the interests of the Class.  Plaintiff has retained competent counsel experienced with class actions and civil rights litigation who intend to vigorously prosecute this action.  Plaintiff has similar legal bases for statutory and punitive damages that are sought on the behalf of members of the Class in this action.  Class certification of the claims is appropriate under Fed. R. Civ. P. 23(b)(2) because Defendant has acted or refused to act on grounds generally applicable to the Class, making appropriate both declaratory and injunctive relief with respect to Plaintiff and the Class as a whole.

35.     Alternatively, class certification is appropriate under Fed. R. Civ. P. 23(b)(3).  A class action is superior to other available methods for the fair and efficient adjudication of this controversy since a multiplicity of actions could result in an unwarranted burden on the court system and could create the possibility of inconsistent judgments.  Moreover, a class action will allow redress for many persons whose claims would otherwise be too small to litigate individually. There will be no difficulty in the management of this action as a class action.

36.     Class members' identities can be identified by Defendant's records.  Plaintiff reserves the right to amend the definition of the Class at any point of the litigation, especially after being provided the opportunity to review the documents and records produced in discovery.

## COUNT I

**Against Defendant for Violations of the ADA, 42 U.S.C. §§ 12101 *et seq.*, on behalf of Plaintiff and the Class**

37.      Plaintiff incorporates by reference the preceding allegations as though fully set forth herein.

38.     Section 302(a) of Title III of the ADA, 42 U.S.C. § 12101 *et seq.*, provides:

No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation.

10

42 U.S.C. § 12182(a).

39.    Defendant's website is a place of public accommodation within the definition of 42

U.S.C. § 12181(7). The website is a service that is offered to the general public, and as such, must

be equally accessible to all potential consumers.

40.    Under 42 U.S.C. § 12182(b)(1)(A)(i), it is unlawful discrimination to deny

individuals with disabilities the opportunity to participate in – or benefit from – the products,

services, facilities, privileges, advantages, or accommodations of an entity.

41.    Under 42 U.S.C. § 12182(b)(1)(A)(ii), it is unlawful discrimination to deny

individuals with disabilities an opportunity to participate in or benefit from the products, services,

facilities, privileges, advantages, or accommodation, which is equal to the opportunities afforded

to other individuals.

42.    Under 42 U.S.C. § 12182(b)(2)(A)(ii)-(iii), unlawful discrimination also includes,

among other things:

> "failure to make reasonable modifications in policies, practices, or procedures,
> when such modifications are necessary to afford such goods, services, facilities,
> privileges, advantages, or accommodations to individuals with disabilities…and a
> failure to take such steps as may be necessary to ensure that no individual with a
> disability is excluded..."

43.    Plaintiff is a member of a protected class of persons who has a physical disability

that substantially limits the major life activity of sight within the meaning of 42 U.S.C. §§

12102(1)(A)-(2)(A).

44.    Furthermore, Plaintiff has been denied full and equal access to the website, has not

been provided goods and/or services that are provided to other patrons who are not disabled, and

has been provided goods and/or services that are inferior to the services provided to non-disabled

persons.

45.     Defendant has failed to take any prompt and equitable steps to remedy its

discriminatory conduct. These violations are ongoing.

## COUNT II

**Against Defendant for Violations of the New York City Human Rights Law, N.Y.C.
Administrative Code §§ 8-101 *et seq.*, on behalf of Plaintiff and the NYC Sub-Class**

46.     Plaintiff incorporates by reference the preceding allegations as though fully set

forth herein.

47.     N.Y.C. Administrative Code § 8-107(4)(a) provides that:

"It shall be an unlawful discriminatory practice for any person, being the owner,
franchisor, franchisee, lessor, lessee, proprietor, manager, superintendent, agent or
employee of any place or provider of public accommodation, because of . . .
disability . . . directly or indirectly, to refuse, withhold from or deny to such person,
the full and equal enjoyment on equal terms and conditions, of any of the
accommodations, advantages, facilities or privileges of the place or provide of
public accommodation."

48.     Defendant's website is a "sales establishment" and "public accommodation" within

the definition of N.Y.C. Admin. Code § 8-102(9).   Defendant owns and operates its website,

making it a "person" within the meaning of N.Y.C. Admin. Code § 8-102(1).

49.     By maintaining a website with accessibility barriers, Defendant violates N.Y.C.

Administrative Code § 8-107(4)(a).  This inaccessibility denies blind patrons full and equal access

to the facilities, products, and services that Defendant makes available to the non-disabled public.

50.     Under N.Y.C. Admin. Code § 8-107(15)(a), Defendant is required to:

"make reasonable accommodation to the needs of persons with disabilities . . . it is
an unlawful discriminatory practice for any person prohibited by the provisions of
[§ 8-107 *et seq.*] from discriminating on the basis of disability not to provide a
reasonable accommodation to enable a person with a disability to . . . enjoy the right
or rights in question provided that the disability is known or should have been
known by the covered entity."

51.     Defendant's actions constitute willful intentional discrimination against the Sub-

Class on the basis of a disability in violation of the N.Y.C. Administrative Code § 8-107(4)(a) and

§ 8-107(15)(a) in that Defendant has constructed and maintained a website with accessibility

barriers and failed to take action to fix the access barriers.  These violations are ongoing.

52.    As such, under § 8-107(4)(a) and/or its implementing regulations, Defendant

discriminates, and will continue in the future to discriminate, against Plaintiff and the NYC Sub-

Class.  Unless the Court enjoins Defendant from continuing to engage in these unlawful practices,

Plaintiff and the NYC Sub-Class will continue to suffer irreparable harm.  Plaintiff is also entitled

to compensatory damages, as well as civil penalties and fines under §§ 8-120(8) and 8-126(a) for

each offense, as well as punitive damages pursuant to § 8-502.

**COUNT III**

**Against Defendant for Declaratory Relief, on behalf of Plaintiff and the Class**

53.    Plaintiff incorporates by reference the preceding allegations as though fully set

forth herein.

54.    Defendant's website contains access barriers denying blind customers full and

equal access to the products and/or services.  The website violates 42 U.S.C. §§ 12182, *et seq.*,

and N.Y.C. Admin. Code § 8-107, *et seq*., which prohibit discrimination against the blind.

55.    A judicial declaration is, therefore, necessary and appropriate.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff demands a judgment:

(a)    awarding Plaintiff statutory money damages, actual damages and punitive

damages, including pre-judgment and post-judgment interest;

(b)    granting a preliminary and permanent injunction requiring Defendant to

take all the steps necessary to make its website fully comply with the requirements set forth in the

ADA and NYCHRL;

13

(c)     providing a declaration that Defendant owns, maintains and/or operates its website in a manner that discriminates against the blind and visually-impaired;

(d)     certifying the Class and the NYC Sub-Class under Fed. R. Civ. P. 23(a) & (b)(2) and/or (b)(3), appointing Plaintiff as class representative, and Plaintiff's attorneys as class counsel;

(e)     awarding attorneys' fees and costs, and other relief; and

(f)     awarding such other relief as this Court deems just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

DATED:  November 23, 2021                    **MIZRAHI KROUB LLP**


Edward Y. Kroub
William J. Downes
200 Vesey Street, 24th Floor
New York, NY  10281
Telephone:  212/595-6200
212/595-9700 (fax)
ekroub@mizrahikroub.com

*Attorneys for Plaintiff*

14